4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Brownsville Division

United States District Court
Southern District of Texas
FILED

MAR 1 9 2001

Michael N. Milby
Clerk of Court

_____

CONNIE CEBALLOS,                          :
                                          :
            Plaintiff,                     :
                                          :
vs.                                        :        Civil No. *B-01-41*
                                          :
REESE PHARMACEUTICAL CO., et. al.,        :
                                          :
            Defendants.                    :
_____       :

## YOUNG AGAIN PRODUCTS INC.'S MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

Young Again Products, Inc., (hereinafter "YAP"), by and through its attorneys, Bill

McCarthy, Eaton & Associates, P.C. and Mark A. Freeman, Freeman & Freeman, P.C., pursuant

to Fed. R. Civ. P. 12(b)(2), hereby files its motion to dismiss for lack of personal jurisdiction and,

as reasons, states:

## INTRODUCTION

The complaint alleges, in pertinent part, that the Court has jurisdiction over Defendant YAP

"because said Defendant purposefully availed itself of the privilege of conducting activities in the

state of Texas and established minimum contacts sufficient to confer jurisdiction over said

Defendant, and the assumption of jurisdiction over Young Again Products will not offend

traditional notions of fair play and substantial justice and is consistent with the constitutional

requirements of due process." Complaint at ¶ 15. Plaintiff goes on to aver that YAP "had

continuous and systematic contacts with the state of Texas sufficient to establish general jurisdiction

over said Defendant." Complaint at ¶ 16. The complaint further alleges that "the cause of action

ClibPDF - www.fastio.com

arose from or relates to the contacts of Defendant, Young Again Products, to the state of Texas, thereby conferring specific jurisdiction with respect to said Defendant." Complaint at ¶ 17. Lastly, Plaintiff alleges that YAP's activities bring it within the ambit of Section 17.042 of the Texas Civil Practice and Remedies Code (Acts Constituting Business in This State). Complaint at ¶ 18. Defendant, YAP, denies each of these averments and affirmatively establishes through the sworn Affidavit of Roger Mason set forth below that it enjoys neither continuous and systematic contacts with Texas nor did it have reason to know this product would be sold there. Therefore, this Court, having no personal jurisdiction over Defendant YAP, must dismiss the allegations filed against it by Plaintiff Ceballos.

## FACTUAL BACKGROUND

YAP is in the business of developing and manufacturing nutritional supplements. YAP has no offices, employees, or agents in the state of Texas nor have any of its officers, employees, or agents traveled to the state of Texas to conduct business on behalf of the company. (Exhibit 1, Affidavit of Roger Mason at ¶¶ 14-17). YAP has never owned, bought, sold, or leased any property in Texas. (Exhibit 1, Affidavit of Roger Mason at ¶ 18). YAP has never been registered to transact business in the state of Texas nor does it maintain a website through which consumers in Texas may directly order any products from YAP. (Exhibit 1, Affidavit of Roger Mason at ¶¶ 19-20).

During the summer of 1999, Reese Pharmaceutical Company ("Reese") requested that YAP develop a Vitamin K cream according to specifications Reese provided to YAP. (Exhibit 1, Affidavit of Roger Mason at ¶ 4). That product was developed exclusively for and sold exclusively to Reese. (Exhibit 1, Affidavit of Roger Mason at ¶¶ 5-7). YAP shipped the product to Reese in Cleveland, Ohio. (Exhibit 1, Affidavit of Roger Mason at ¶ 8). Reese received all of the Vitamin

2

K product in two shipments of 2,000 two-ounce, unlabeled units per shipment. (Exhibit 1, Affidavit of Roger Mason at ¶ 9). At all times pertinent hereto, Reese was known to YAP as a small chemical company which conducted its business within the state of Ohio. (Exhibit 1, Affidavit of Roger Mason at ¶ 10).

## STANDARD OF REVIEW

It is clearly established that Plaintiff has the burden of proving personal jurisdiction. *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999); *See also, Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir. 1994). Vague and general assertions that a nonresident conducts business in the forum state are insufficient to bring the nonresident within the Court's personal jurisdiction. *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999). In *Gardemal*, Plaintiff failed to specifically assert "the extent, duration, or frequency of Westin Mexico's business dealings in Texas." *Gardemal, supra*, 186 F.3d at 596. Similarly, Plaintiff here has provided no specific information concerning what contacts YAP has with the state of Texas other than that Plaintiff purchased a product the manufacture of which allegedly involved YAP. Furthermore, as the Court found in *Gardemal*, YAP "has no employees in Texas, has no office or address in Texas, and. . .has 'never owned, bought, sold, or leased any property in Texas, or been registered to transact business in Texas.'" *Gardemal, supra*, 186 F.3d at 596. (Exhibit 1, Affidavit of Roger Mason at ¶ 14-17).

## ARGUMENT

The Court must address two issues when resolving a question of personal jurisdiction in a diversity case: the Long-Arm Statute of the forum state and the Due Process considerations of the Fourteenth Amendment. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Since the Supreme Court of Texas has decided that the Long-Arm Statute is coextensive with the Due Process

ClibPDF - www.fastio.com

considerations of the Fourteenth Amendment, the analysis is simplified. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 375 (Tex. 1990); *Ham v. La Cinenega Music Company*, 4 F.3d 413, 415 (5th Cir. 1993). Therefore, only the constitutional analysis is required. *Fowler v. Broussard*, 2001 U.S. Dist. LEXIS 573, 5 (N.D. Tex. 2001).

The exercise of personal jurisdiction over a nonresident defendant comports with Due Process when two requirements are met. First, the nonresident defendant must have "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with that state. *International Shoe Co. v. Washington*, 326 U.S. 310, 315-17 (1945). Second, the exercise of jurisdiction over the nonresident must not "offend 'traditional notions of fair play and substantial justice'." *International Shoe, supra*, 326 U.S. at 315-17.

A court has specific jurisdiction when the cause of action is the basis for jurisdiction. *Fowler v. Broussard*, 2001 U.S. Dist. LEXIS 573 at 7, *quoting*, *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). Specific jurisdiction is proper when the nonresident has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Ruston Gas Turbine v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993), *quoting*, *Burger King Corp v. Rudzewicz*, 471 US 462, 475 (1985). Contacts unrelated to the cause of action which are "continuous and systematic" can give rise to general personal jurisdiction. *Fowler v. Broussard*, 2001 U.S. Dist. LEXIS 573 at 7, *quoting*, *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). Each will be discussed in turn as they relate to YAP in this litigation.

## A.    Specific Jurisdiction

Where a forum seeks to assert specific jurisdiction over a nonresident defendant who has not consented to suit in the forum, the United States Supreme Court has held that a defendant must

4

have fair warning that it is subject to suit in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). This requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992). Thus "[the] forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" and those products subsequently injure forum consumers. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 386, 297-98 (1980). While the Supreme Court, in its plurality opinion in *Asahi Metal Indus. v. Superior Court*, 480 U.S. 102 (1987), suggested that a product which was swept into commerce and found in the forum state was insufficient, absent other contacts with the forum state by the nonresident, to permit the courts to assert personal jurisdiction over the nonresident, the Fifth Circuit has "continued to apply the stream of commerce analysis found in [its] pre-Asahi cases." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 n 11 (5th Cir. 1993).

According to Fifth Circuit precedent, the nonresident's contacts with the forum state must be purposeful on the part of the nonresident and may not be the unilateral activities of another party. *Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 385 (5th Cir. 1989), *citing, World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). Additionally, the nonresident must reasonably be able to "anticipate being haled into court" in the forum state. *Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 385 (5th Cir. 1989), *citing, World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The forum state can "assert[] personal jurisdiction over a

ClibPDF - www.fastio.com

corporation that delivers its products into the stream of commerce *with the expectation that they will be purchased by consumers in the forum state.*" *Bean Dredging, supra,* 744 F.2d at 1084.

YAP has not, in this instance or ever, purposefully directed its activity of selling Vitamin K cream toward the state of Texas. (Exhibit 1, Affidavit of Roger Mason at ¶¶ 8, 11-13). YAP specially manufactured Vitamin K for Reese, an Ohio company which YAP believed operated in local markets. (Exhibit 1, Affidavit of Roger Mason at ¶¶ 5, 6, 10). Here, YAP sold this product to Reese and Reese unilaterally, and without any knowledge on the part of YAP, resold the product in Texas. YAP had no expectation that the Vitamin K cream it sold to Reese in Ohio would be purchased by consumers in Texas. Since specific jurisdiction cannot be asserted over a nonresident defendant who did not expect that its products would be available in the forum state and whose own purposeful actions are not the source of the product being found in the forum state, all allegations against Defendant YAP must be dismissed.

In *Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir. 1980), the Circuit Court set forth a "reason to know or expect" standard. The *Oswalt* Court found that the nonresident manufacturer had "reason to know or expect" that its product, lighters, would reach Texas, *Oswalt, supra,* 616 F.2d at 198, and the Court could properly assert specific personal jurisdiction over the nonresident defendant. Several million of the nonresident's lighters were sold to the nonresident's sole U.S. distributor each year and the nonresident knew that the distributor had at least one customer with national exposure. Based on these facts, the Court held that the manufacturer could "reasonably anticipate being haled into Court" in Texas. *World-Wide Volkswagen, supra,* 444 U.S. at 297. Therefore, the nonresident manufacturer there was subject to the specific jurisdiction of the Texas courts when the injury was caused by one of its products. *Oswalt, supra,* 616 F.2d at 202.

ClibPDF - www.fastio.com

Similarly, in *Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081 (5th Cir. 1984), a Washington-based steel castings manufacturer shipped its product to a cylinders manufacturer in California who in turn sold its cylinders (using the steel castings) to a Louisiana company to be incorporated into a dredge. The steel castings manufacturer was sued in Louisiana for damages resulting from the defective dredge and its component parts. A representative of the steel castings company testified that "his company's commercial products, once they entered the stream of commerce, might go virtually anywhere." *Bean Dredging, supra*, 744 F.2d at 1082. Since the steel castings manufacturer was aware that its parts could be incorporated into products in practically any state and destined for use "virtually anywhere," the Court could properly exercise specific personal jurisdiction over the nonresident.

A very different situation is presented to this Court. YAP developed the Vitamin K Cream specifically for Reese. (Exhibit 1, Affidavit of Roger Mason at ¶¶ 5-7). YAP believed that Reese was a small operation and limited its market to the state of Ohio. (Exhibit 1, Affidavit of Roger Mason at ¶ 10). Furthermore, YAP did not know that Reese did any business in Texas and had no reason to know based on the above. Under these circumstances, YAP could "reasonably anticipate being haled into court" only in the state of Ohio. YAP could not reasonably anticipate that this product would find its way into the Texas market.

The Circuit Court further addressed the jurisdictional question when products are shipped by the manufacturer into the forum but sold to someone outside that forum in *Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383 (5th Cir. 1989). Jugometal, a Yugoslavian company, sold asbestos to Huxley who then sold the product to Uvalde, a Texas company. While Jugometal did not know the identity of the ultimate purchaser, it shipped its product directly to Houston every

7

couple of months for 15 years; the product was labeled "Houston-Huxley;" testing of the asbestos was done by a Houston firm to whom Jugometal paid half the testing fees; and Jugometal asked Huxley without limitation to cultivate an American market." *Irving, supra*, 864 F.2d at 386.

In a case similar to *Irving*, the Circuit Court found specific personal jurisdiction over a manufacturer of parts as a result of the shipment. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415 (5th Cir. 1993). There the parts manufacturer was aware that its parts were destined for Texas, the purchase order prepared by the parts manufacturer identified that the buyer was in Houston, the equipment was delivered by the parts manufacturer to Houston, and employees of the parts manufacturer traveled to Texas on numerous occasions to assist and meet with the buyer. *Ruston Gas Turbines, supra*, 9 F.3d at 417.

As discussed, *supra*, there is no parallel activity on the part of YAP concerning the Vitamin K cream it sold to Reese. All dealings between YAP and Reese occurred outside the state of Texas. YAP never shipped any products to Texas. Instead, YAP shipped all of the Vitamin K cream it sold to Reese to Ohio. The number of units shipped was small and was specifically solicited by Reese in Ohio.

Finally, this Court reviewed its ability to exercise personal jurisdiction over a nonresident defendant in *J.M. Huber Corp. v. Pan American Express, Inc.*, 118 F. Supp. 2d 764 (S.D. Texas 2000). There, plaintiff alleged that defendant improperly loaded, blocked, and braced goods to be shipped from California, through Texas, and on to Mexico. The goods were damaged in a vehicular accident within the State of Texas. Plaintiff filed suit in Texas and defendant moved to dismiss the allegations against it for lack of personal jurisdiction. The Court dismissed the complaint against defendant because plaintiff could not establish that the Texas Court had specific jurisdiction over

8

the defendant.  All of the affirmative actions taken by defendant were taken in California and the actual transportation was not defendant's responsibility.  Simply knowing that the goods would be transported through Texas was not enough to place defendant within the specific personal jurisdiction of the Texas Courts.

All of YAP's affirmative actions concerning the Vitamin K cream were conducted outside Texas as well.  Moreover, YAP was not aware that its Vitamin K products would pass through Texas, let alone that they were destined for sale or use in the state.  (Exhibit 1, Affidavit of Roger Mason at ¶ 8, 11).  Therefore, this Court cannot assert specific personal jurisdiction over Defendant YAP.

## B.      General Jurisdiction

When the Court does not have specific jurisdiction over the nonresident, as is the case here, the Court may still exercise "general personal jurisdiction" if the requisite "minimum contacts" between the defendant and the forum state are "continuous and systematic."    *Helicopteros, supra,* 466 U.S. at 415-16.  To meet the test for "minimum contacts," Plaintiff must prove that the out-of-state defendant has "purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Gardemal v. Westin Hotel Company,* 186 F.3d 588, 595 (5th Cir. 1999), *citing, Hanson v. Denckla,* 357 U.S. 235, 253 (1958). "[T]he minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state." *Gardemal, supra,* 186 F.3d 588, 595 (5th Cir. 1999), *quoting, Jones v. Petty-Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1068 (5th Cir. 1992).

In *Gardemal,* the Circuit Court reviewed whether Westin Mexico has sufficient contacts

with Texas to justify requiring Westin Mexico to answer a complaint filed by a Texas resident. *Gardemal*, *supra*, 186 F.3d at 595. The record before the Court revealed that "Westin Mexico ha[d] no employees in Texas, ha[d] no office or address in Texas, and. . .ha[d] 'never owned, bought, sold, or leased any property in Texas, or been registered to transact business in Texas.'" *Gardemal*, *supra*, 186 F.3d at 596. Accordingly, the Circuit Court refused to assert general personal jurisdiction over Westin Mexico.

In the instant case YAP has no employees in Texas; has no office in Texas, has never owned, bought, sold, or leased any property in Texas, or been registered to transact business in Texas or transacted any business in Texas. (Exhibit 1, Affidavit of Roger Mason at ¶¶ 16-19). This Court, therefore, may not assert general personal jurisdiction over Defendant YAP.

## CONCLUSION

The personal jurisdiction of this Court cannot reach Defendant YAP. First, this action does not arise out of any action Defendant YAP committed within the State of Texas. Second, Defendant YAP does not have any contacts with the forum state, let alone "continuous and systematic contacts."

10

WHEREFORE, Defendant Young Again Products respectfully requests that this Court dismiss all allegations against it for lack of personal jurisdiction.

Respectfully submitted,

EATON & ASSOCIATES

By: _Bill McCarthy_

Bill McCarthy
Bar No. 13372500; FBN 2444
2208 Primrose Avenue, Bldg C
McAllen, TX 78504-4162

FREEMAN & FREEMAN, P.C.

By: _Mark A. Freeman_

Mark A. Freeman
MD Federal Bar No. 013635
One Church Street
Suite 200
Rockville, Maryland 20850
(301) 315-0200

Attorneys for the Plaintiffs

11

ClibPDF - www.fastio.com

## CERTIFICATE OF SERVICE

We **HEREBY CERTIFY** that a copy of the foregoing Defendant's Motion to Dismiss for Lack of Personal Jurisdiction was mailed first class, postage prepaid, on this _19th_ day of March, 2001, to:

Staton M. Childers
Griggs & Harrison, P.C.
1301 McKinney, Suite 3200
Houston, TX 77010-3033

Mr. Rick Canales
Law Offices of Rick Canales
845 East Harrison
Brownsville, TX 78520

Mr. Tom Hermansen
Barger, Hermansen, McKibben & Villareal, L.L.P.
1100 Tower II
555 N. Carancahua
Corpus Christi, TX 78478

_Bill McC_____
Bill McCarthy

12

# EXHIBIT 1

ClibPDF - www.fastio.com

Case 1:01-cv-00041    Document 4    Filed in TXSD on 03/19/2001    Page 14 of 16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### Brownsville Division

|  |  |
|---|---|
| CONNIE CEBALLOS, | : |
| **Plaintiff,** | : : : : |
| **vs.** | :      Civil No. |
| REESE PHARMACEUTICAL CO., et. al., | : : |
| **Defendants.** | : : |

## AFFIDAVIT OF ROGER MASON

Roger Mason, being duly sworn, does depose and say as follows:

1.  My name is Roger Mason. I am over 18 years of age and am competent to testify to the matters herein.

2.  I am President of Young Again Products, Inc., (YAP), a Maryland corporation, a defendant in the above-captioned proceeding, and have been employed in that capacity since it inception.

3.  In the above capacities, I have obtained first-hand knowledge of all products marketed by the corporation and have had access to all sales and marketing data of the corporation since its inception.

4.  During the summer of 1999, Reese requested that Young Again Products provide a Vitamin K Cream according to specifications Reese provided to Young Again Products.

5.  Young Again Products is not in the business of manufacturing Vitamin K cream.

6.     This Vitamin K Cream was provided and manufactured by Young Again Products exclusively for sale to Reese Pharmaceuticals.

7.     The Vitamin K product provided for Reese Pharmaceuticals has not been sold by Young Again Products to anyone other than Reese Pharmaceuticals.

8.     All units of the Vitamin K Cream were shipped to Reese Pharmaceutical Company, Inc., in Cleveland, Ohio.

9.     YAP shipped the Vitamin K Cream in two separate shipments of 2,000 two-ounce, unlabeled units per shipment. A third shipment of 2,000 two-ounce, unlabeled units was refused and destroyed.

10.    Young Again Products understood that Reese Pharmaceutical Company was a small chemical company which conducted its business in the state of Ohio.

11.    Young Again Products had no reason to believe that the Vitamin K cream would be sold in the state of Texas by Reese or any other entity.

12.    Young Again Products was not aware that Reese sold or intended to sell the Vitamin K cream in the state of Texas.

13.    Young Again Products has never sold any Vitamin K cream in Texas.

14.    I have not, in my official capacity as President of Young Again Products, traveled to Texas to promote or sell any Vitamin K products or for any other business purpose.

15.    No officer, agent, or employee has traveled on behalf of Young Again Products to Texas to promote or sell any Vitamin K products or for any other business purpose.

16.    Young Again Products has no employees in Texas.

17.    Young Again Products has no office in Texas.

18.    Young Again Products has never owned, bought, sold, or leased any property in Texas.

ClibPDF - www.fastio.com

19.    Young Again Products has never been registered to transact business in Texas.

20.    Young Again Products does not maintain a website through which consumers may

directly order any products manufactured by Young Again Products.


I affirm, under the penalties of perjury that the foregoing representations are true.


_Roger Mason_

Roger Mason


3/16/01

Date